IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH W. SENNETT<br>*Plaintiff,* | §§§§ | |
| vs. | §§ | CAUSE NO. _____ |
| CATALYST CONSTRUCTION, LLC.<br>*Defendant.* | §§§§§ | JURY DEMANDED |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COMES**, Kenneth W. Sennett ("Plaintiff"), complaining of and about Catalyst Construction ("Defendant"), and files this, his Original Complaint, and for cause of action shows unto the Court the following:

### I.     PARTIES

    1.    Plaintiff, Kenneth W. Sennett, a former employee of Defendant, is a citizen of the United States and currently resides in Beaumont, Jefferson County, Texas.

    2.    Defendant, Catalyst Construction Plaintiff's former employer, is a foreign for-profit corporation incorporated in Texas and doing business in Houston, Harris County, Texas, and may be served with process by serving its registered agent Cornelius Dupre, II, at 314 North Post Oak Lane, Houston, TX 77024, via certified mail, return receipt requested.

### II.     JURISDICTION AND VENUE

    3.    This action is brought under the Civil Rights Act of 1964, §701 et seq., 42 U.S.C.A. § 2000e et seq. This Court has jurisdiction pursuant to U.S. Const. art. 3; 28 U.S.C. § 1331 as this

case presents a Federal question.

4. This Court has supplemental jurisdiction over Plaintiff's pendent state law claim pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1) as this is the district in which Defendant resides.

### III.   NATURE OF ACTION

6. This is an action pursuant to 42 U.S.C. § 2000e-2(a) to correct and recover for Defendant's unlawful employment practices on the basis of Plaintiff's race.

### IV.   CONDITIONS PRECEDENT

7. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within one hundred and eighty days (180) of the acts complained of herein, and Plaintiff's Original Complaint is filed within ninety (90) days of receipt of his Notice of Right to Sue **(Exhibit A)**.

### V.   FACTS

8. Plaintiff was hired by Catalyst Construction ("Defendant"), in September, 2010, as a rig welder by William Brown ("Mr. Brown"). Plaintiff is an African American male. Also working with Plaintiff was rig welder Crispo M. Pieternelle, Jr. (also African American). Plaintiff and Mr. Pieternelle rented a house in West Virginia because they were assured by Mr. Brown that there was plenty of work and that the work could last for ten years.

9. Shortly after Plaintiff began working for Defendant he began to experience discrimination in the form of extremely racist comments by Mr. Brown directed at him and Mr. Pieternelle.  Plaintiff was told by other (Causasian) workers that Mr. Brown would often refer to him and Mr. Pieternelle as "the niggers," behind their backs.  After an argument he had with Mr.

Pieternelle, Mr. Brown told Plaintiff that "Crispo is a nigger!" Mr. Brown also told stories on the jobsite about how all black people were racist toward him when he was growing up and that he would never forget it.

10. On or around November 4, 2010, Plaintiff and Mr. Pieternelle were told by Mr. Brown that a spool piece was not built the way the client wanted it. He told the two men that it needed to be fixed but that the client could not know about it being fixed. Plaintiff and Mr. Pieternelle agreed to do the work for him. Mr. Brown told Plaintiff that he would pay the men for the work. Plaintiff and Mr. Pieternelle, along with several other workers (all Causasian), completed the work and the spool piece was returned to the job site.

11. A few weeks after the work was completed Mr. Brown had still not paid Plaintiff or Mr. Pieternelle for their work. Plaintiff went to Mr. Brown and asked him when he could expect to be paid. Mr. Brown told Plaintiff that he had to figure out how he was going to pay the men because he did not want the client to know that the work had been done. In December, 2010, and after a full month had gone without being paid, Plaintiff again went to Mr. Brown and asked him when he was going to be paid. Mr. Brown told Plaintiff that he "was still working on it."

12. Plaintiff began to get rather frustrated by Mr. Brown's continually putting him off and decided to ask the other workers who had helped him and Mr. Pieternelle whether they had been paid. He was shocked and disappointed to learn that every one of the other workers (all Causasian) had been paid except for himself and Mr. Pieternelle.

13. From December, 2010 through February, 2011, Plaintiff kept hearing from other coworkers about comments Mr. Brown would make behind their backs referring to him and Mr. Pieternelle as "the niggers"

14. In January, 2011, after two months had passed and neither he nor Mr. Pieternelle had gotten paid for the work they had done, Plaintiff finally had had enough and called the main office of Catalyst Construction.  He spoke to Catalyst Construction owner Matt Matthews and explained to him what had happened.   Plaintiff let Mr. Matthews know that he had not been paid and wanted to know when he could expect to be paid. A few days later, Mr. Matthews came onto the jobsite and spoke to everyone in the morning meeting. He told everyone at the meeting that Plaintiff had called the main office and that he would be checking into the matter.   Nevertheless, Plaintiff and Mr. Pieternelle never heard about it again.   No person from Catalyst Construction, neither Mr. Brown nor Mr. Matthews, nor any representative of Catalyst Construction contacted him to discuss the payment.   Subsequently, neither Plaintiff nor Mr. Pieternelle was <u>ever</u> paid for the work they had completed for Defendant.

15. On February 23, 2011, after Plaintiff had finished the assignment he had been working on for Defendant, he went to the office to be assigned to another job.  It was common practice at Catalyst Construction for employees to finish up a job and to come to the office to receive their next assignment.  When he arrived at the office and told Mr. Brown that he had finished his assignment and was ready for his next one, Mr. Brown told Plaintiff that he did not have any work for him but for him to report back the next day.

16. Plaintiff returned on February 24, 2011 and again on February 25, 2011, to Mr. Brown's office to receive his assignment.   Each time, Plaintiff was told by Mr. Brown that he did not have any work for him.   On February 25, 2011, after being told for the third time that there was no work for him, Plaintiff told Mr. Brown that he was going to Texas for a week.   Mr. Brown assured Plaintiff that there would be work for him by the time he came back from Texas.

17. In March, 2011, Plaintiff returned to West Virginia and reported to the office as Mr. Brown had told him to. Again, Mr. Brown told him that he did not have any work for him. Plaintiff was dumbfounded. Mr. Brown had assured him that there would be work when he returned and for a fourth time, did not have any. At the exact same time that Plaintiff was in the office talking to Mr. Brown, however, Plaintiff noticed that two brand new welders (both Causasian), were in the office being hired by Defendant. Plaintiff later learned that several other employees who he and Mr. Pieternelle had worked with (all Causasian) had been given new assignments.

18. Throughout March, 2011, Plaintiff continually called Mr. Brown for work and Mr. Brown would tell Plaintiff that he had no work for him. When Plaintiff asked about giving him a layoff (reduction in force) notice, so that he could file for unemployment benefits, Mr. Brown told him that the Company did not give such notices. Eventually Mr. Brown stopped returning Plaintiff's calls altogether, stopped answering his calls, and when Plaintiff would go to the office to speak to him, Mr. Brown would conveniently not be in or not be available.

19. In March, 2011, Plaintiff called an inspector for XTO, Defendant's client, looking for work. Plaintiff learned that Defendant had a job coming up with XTO which would need rig welders. Plaintiff however, was never offered a job on the project.

20. Coincidently, Mr. Brown learned that Mr. Pieternelle had also finished his job and reported to Mr. Brown for his next assignment. He was also told that he needed to check back with Mr. Brown the next day. Just like Plaintiff, Mr. Pieternelle never got a call about a job with Defendant either. Subsequently, Plaintiff and Mr. Pieternelle were forced to find work 100 miles away, in Pittsburg PA. They also had to continue paying rent and utilities on the West Virginia

property, which they had rented because of Mr. Brown's assurances that there would be work and they had to pay additional rent for a hotel in Pennsylvania.

21. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on or around May, 2011.  On July 26, 2013, the EEOC issued a Determination and Finding of Discrimination.  (**See Exhibit B**).  Specifically, the EEOC found that the evidence demonstrated that neither Plaintiff nor Mr. Pieternelle were recalled for work, although several Causasian co-workers had been recalled and/or remained working through Mr. Brown's placement of them on the schedule.

22. The EEOC also found that the evidence demonstrated that the alleged non-discriminatory reason given by Defendant for not recalling Plaintiff was a pretext for discrimination, because it was factually untrue, insufficient to motivate the decisions at issue, and did not in-fact motivate the decisions at issue. The EEOC found that the evidence demonstrated that Mr. Brown was the decision-maker concerning the recall and termination decisions.

23. The EEOC ultimately found that there was reasonable cause to believe that Defendant subjected Plaintiff to denial of recall for work and termination because of his race (African American) in violation of Title VII.

24. The EEOC's Notice of Conciliation Failure was issued on January 24, 2014.  The EEOC issued a Right to Sue letter on February 6, 2014.  All administrative remedies have therefore been exhausted by Plaintiff.

## VI.   CAUSES OF ACTION

### COUNT 1 – RACE DISCRIMINATION

25. Defendant, Catalyst Construction, LLC, intentionally engaged in unlawful employment practices involving Plaintiff because of his race.

26. Defendant, Catalyst Construction, LLC, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

### *COUNT 2 – QUANTUM MERUIT*

27. Plaintiff provided Defendant with the valuable services of his labor, time and efforts. Defendant accepted these services. The services were provided for Defendant's benefit. Plaintiff's expectation of receiving fair compensation for these services was reasonable, in fact the parties had agreed on the compensation to which Plaintiff would be entitled.

28. Defendants knew or should have known that Plaintiff expected to be compensated when Defendants accepted Plaintiff's services.

29. Because Plaintiff expected compensation, Defendant's acceptance of Plaintiff's services without payment resulted in damages to Plaintiff within the jurisdictional limits of this court, including the amount of unpaid compensation, plus attorney's fees, court costs, interest and all other.

### VII.   DAMAGES

30. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a. Back pay from the date of his termination to present;

    b. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    c. All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff;

  d.  All reasonable and necessary costs incurred in pursuit of this suit;

  e.  Emotional pain;

  h.  Pre- and post-judgment interest;

  j.  Mental anguish in the past;

  k.  Mental anguish in the future; and

  l.  Medical and other benefit expenses incurred due to the loss of benefits.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury and tenders the appropriate fee with this petition.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Kenneth Sennett, respectfully prays that the Defendant, Catalyst Construction, LLC be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for specific relief and/or damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be justly entitled at law or in equity.

Respectfully submitted,



By: _____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
Southern District Bar No: 713316
5433 Westheimer Rd., Suite 825
Houston, TX 77056
(713)742-0900 (main)
(713)742-0951 (facsimile)
**ATTORNEY FOR PLAINTIFF
KENNETH W. SENNETT**

*OF COUNSEL FOR PLAINTIFF:*



Michelle Mishoe Miller
Texas Bar No.: 24044991
Southern District Bar No.: 997007
5433 Westheimer Rd., Suite 825
Houston, TX 77056
(713)742-0900 (main)
(713)742-0951 (facsimile)